UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DALIA GAL f/k/a DALIA GAL-GHELBER,

                              *Plaintiff(s)*,

         -against-

VIACOM INTERNATIONAL, INC., SIMON &
SCHUSTER, INC., THE THOMSON
CORPORATION, THOMSON GALE, INC.,
THORNDIKE PRESS, SIMON & SCHUSTER
AUDIO, INC., a division of Simon & Schuster,
Inc., POCKET BOOKS, INC., a division of
Simon & Schuster, Inc., and MARY HIGGINS
CLARK,

                             *Defendant(s)*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Index No. 05 Civ. 263 (CSH)

*PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT AND FOR SANCTIONS*

*HELLER, HOROWITZ & FEIT, P.C.*
292 Madison Avenue
New York, New York 10017
(212) 685-7600

*Attorneys for Plaintiff*

*Of Counsel:*
     Richard F. Horowitz
     Evan R. Shusterman

# TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT; PROCEDURAL HISTORY** ...............................................2

**ARGUMENT**

**POINT I:**     Summary Judgment Standard and
Applicable Substantive Law .......................................................................3

**POINT II:**     Law Of The Case: Reasonable Trier Of Fact
Could Find The Works Substantially Similar ............................................5

       A.     Memorandum and Order of this Court dated December 5, 2005
Denied Defendants' Motion to Dismiss the Complaint...................5

       B.     Plaintiff Will Not Rehash
Her Opposition to the Motion to Dismiss .......................................7

**POINT III:**     Access May Be Shown Through Circumstantial Evidence .........................7

       A.     Unusual Speed May Constitute Evidence of Access.......................7

       B.     Discovery Elicited a Very Suspicious
Timeframe For the Creation of the Novel .......................................9

       C.     By Her Own Statements, It Takes Ms. Clark At
Least Six Months to a Full Year to Complete the
"Concentrated Writing Process" for a Novel .................................11

       D.     Clark's Alleged Notes Do Not Show Independent Creation ...........13

**POINT IV:**     Sanctions/Fees.........................................................................................14

**CONCLUSION** ....................................................................................................17

i

## *TABLE OF AUTHORITIES*

**CASES**                                                                    **PAGES**

*Arizona v. California,*
    460 U.S. 605 (1983)................................................................................................6

*Baker v. Urban Outfitters, Inc.,*
    254 F.Supp.2d 346 (S.D.N.Y., 2003)..................................................................16

*Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc.,*
    150 F.3d 132 (2nd Cir. 1998) ...............................................................................4

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)..........................................................................................3, 4

*Chambers v. TRM Copy Ctrs. Corp.,*
    43 F.3d 29 (2d Cir. 1994)......................................................................................4

*Crescent Publishing Group, Inc. v. Playboy Enterprises, Inc.,*
    246 F.3d 142 (2d Cir., 2001) ..............................................................................14

*Design Tex Group, Inc. v. U.S. Vinyl Mfg. Corp.,*
    2005 WL 2063819 *2 (Rakoff, J.)(S.D.N.Y., August 24, 2005)............................7

*Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,*
    499 U.S. 340, 11 S.Ct. 1282, 113 L.Ed. 358 (1991)............................................4

*Fogerty v. Fantasy,*
    510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). ....................................14

*Gallo v. Prudential Residential Servs. L.P.,*
    22 F.3d 1219 (2d Cir.1994) ...................................................................................4

*Gambello v. Time Warner Comm. Inc.,*
    186 F.Supp.2d 209, 230 (E.D.N.Y. 2002).............................................................16

*Gemisys Corp. v. Phoenix American, Inc.,*
    186 F.R.D. 551 (N.D. Cal, 1999)...........................................................................9

*Hamil America Inc. v. GFI,*
    193 F.3d 92 (2d Cir. 1999)....................................................................................7

*Herzog v. Castle Rock Entertainment,*
    193 F.3d 1241 (11th Cir., 1999).......................................................................7 , 8

## *CASES*                                                                       *PAGES*

*Hogan v. DC Comics,*
  48 F.Supp.2d 298 (S.D.N.Y. 1999)..............................................................4, 6

*In re Korean Air Lines Disaster,*
  798 F.Supp. 755 (E.D.N.Y.1992) ....................................................................6

*JB Oxford & Co. v. First Tenn. Bank Nat'l Assoc.,*
  427 F.Supp.2d 784 (M.D. Tenn, April 12, 2006), ....................................8, 9, 11

*Margo v. Weiss,*
  213 F.3d 55 (2d Cir. 2000)...........................................................................14

*Marvel Characters, Inc. v. Simon,*
  310 F.3d 280 (2d Cir., 2002) ..........................................................................3

*O'Brien v. Alexander,*
  101 F.3d 1479 (2d Cir.1996) ........................................................................16

*O'Rourke v. RKO Radio Pictures,*
  44 F.Supp. 480 (D.Mass. 1942)....................................................................13

*Pinto v. Allstate Ins. Co.,*
  221 F.3d 394, (2d Cir. 2000) ..........................................................................4

*Salovaara v. Eckert,*
  222 F.3d 19 (2d Cir. 2000) ...........................................................................14

*Scott v. Wkjg, Inc.,*
  1966 WL 7626 (N.D. Ind.) ..............................................................................8

*U.S. v. Uccio,*
  940 F.2d 753, 758 (2d Cir 1991) .....................................................................6

*U-Neek, Inc. v. Wal-Mart Stores, Inc.,*
  147 F.Supp. 2d 158 (S.D.N.Y. 2001).............................................................4, 5

*Walker v. Time Life Films, Inc.,*
  784 F.2d 44 (2d Cir., 1986) ............................................................................5

| *CASES* | *PAGES* |
|---|---|

***Westerbeke Corp. v. Daihatsu Motor Co., Ltd.***,
  304 F.3d 200 (2d Cir., 2002) ...................................................................................6

***White v. Murtha***,
  377 F.2d 428 (5th Cir. 1967). ...................................................................................6

## *STATUTES AND OTHER MATERIALS*

Fed. R. Civ. P. 56(e). ...................................................................................3

17 U.S.C. § 505. ...................................................................................14

Nimmer on Copyright, § 13.02[C] at 13-33 (2006)...................................................................................7

## *PRELIMINARY STATEMENT; PROCEDURAL HISTORY*

On December 5, 2005, this Court denied Defendants' pre-Answer Motion to Dismiss the Complaint on the ground that a reasonable jury could find that substantial similarities exist between Plaintiff's copyrighted screenplay, *Immortalin* (the "Work") and Defendants' novel, *A Second Time Around* (the "Novel"). To decide that motion, this Court thoroughly analyzed the two works, as it would on a summary judgment motion, and determined that a lay person could reasonably find that the two works are similar -- the ultimate standard in copyright infringement actions. Now, more than a year later, following the completion of discovery, Defendants attempt to repackage their motion to dismiss in a summary judgment box, coupled with another ill-advised motion for sanctions against Plaintiff and our firm for persisting with this action. Despite Defendants' regurgitation of their prior arguments, the only issue presented on this motion that has not already been *decided* by this Court is whether a reasonable jury could conclude that Defendants had access to the Work.

The question of access boils down to whether Defendant had a "reasonable opportunity" to view Plaintiff's work. Considering the near impossibility of being able to show this opportunity directly, evidence of access is often circumstantial, as it is in this case. Plaintiff bases her argument of Defendants' access to the Work on the fact that, even by Ms. Clark's own standard, a 400-page novel could not have been drafted in only two months without having access to the prewritten material. Additionally, Defendants have produced fewer than 25 pages of notes from a notebook purporting to be the entirety of draft work done for the Novel -- no early drafts of the Novel were produced. Based on the utter dearth of documents produced during discovery showing any groundwork by Defendants for the Novel, we submit that Defendants will not be able to prove independent creation to refute Plaintiff's circumstantial

showing of access.  When the factual record is viewed in its entirety, and in the light most

favorable to Plaintiff, there certainly exists a question of fact for the jury to decide as to whether

Defendants independently created the Novel or in fact copied from Plaintiff's substantially

similar screenplay.

Following the denial of the motion to dismiss, the Court held a conference, at which it

recognized that -- as held in its memorandum and opinion -- it could not conclude that "no

reasonable trier of fact could find the works substantially similar." Since the access issue had

been conceded by Defendants for the purposes of the motion to dismiss, counsel and the Court

recognized that the main focus of discovery in this case would be the access issue. It was during

this process that Plaintiff elicited the dearth of notes and astounding alacrity with which Ms.

Clark purports to have written the 400-page novel.

## *ARGUMENT*

## I.

## SUMMARY JUDGMENT STANDARD AND APPLICABLE SUBSTANTIVE LAW

"The standards governing summary judgment are well-settled. Summary

judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits…show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law.'" *Marvel*

*Characters, Inc. v. Simon*, 310 F.3d 280, 285-286 (2d Cir., 2002) (citing Fed.R.Civ.P. 56(c); *see*

*also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23(1986). "The party seeking summary

judgment has the burden to demonstrate that no genuine issue of material fact exists." *Id.*

Summary judgment is improper if there is any evidence in the record that could reasonably

support a jury's verdict for the non-moving party." *Id.* (citing *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex, supra.* In deciding the motion, the trial court must first resolve all ambiguities and draw all inferences in favor of the non-moving party, and then determine whether a rational jury could find for that party. *Gallo v. Prudential Residential Servs. L.P.*, 22 F.3d 1219, 1223-24 (2d Cir.1994).

"If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with 'specific facts showing that there is a genuine issue for trial.'" *U-Neek, Inc. v. Wal-Mart Stores, Inc.*, 147 F.Supp.2d 158, 166-67 (S.D.N.Y. 2001), *citing,* Fed. R. Civ. P. 56(e). If there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party with respect to the issues on which summary judgment is sought, summary judgment is improper. *Id.; See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

"To establish a claim of copyright infringement, a plaintiff must prove: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Hogan v. DC Comics,* 48 F.Supp.2d 298, 307 (S.D.N.Y. 1999) (*citing Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,* 499 U.S. 340, 361, 11 S.Ct. 1282, 113 L.Ed. 358 (1991)). "Copying may be established 'either by direct evidence of copying or by indirect evidence including access to the copyrighted work, similarities that are probative of copying between the works and expert testimony.'" *Hogan, supra,* at 308 (*citing Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc.,* 150 F.3d 132, 137 (2nd Cir. 1998)). "In most

cases, the test for substantial similarity is the 'ordinary observer' test, which requires a determination of whether the average *lay* observer would find that the defendant misappropriated the copyrighted work." *U-Neek, Inc., supra.*

## II.

### LAW OF THE CASE: REASONABLE TRIER OF FACT COULD FIND THE WORKS SUBSTANTIALLY SIMILAR

**A.     *Memorandum and Order of this Court dated December 5, 2005 Denied Defendants' Motion to Dismiss the Complaint***

As previously stated, in its Memorandum Opinion and Order dated December 5, 2005, this Court denied Defendants' pre-Answer motion to dismiss the complaint. For the purposes of that motion, Defendants had conceded their argument on access and focused on the question of the similarities between the Work and the Novel. As discussed in the Opinion, "[i]n order to address the substantial similarity issue, the Court [undertook] its own review of the Novel and the Screenplay, as the works themselves are the best evidence of the presence or absence of substantial similarity, and supersede and control contrary descriptions of them." Op at 6 (citations omitted). Upon completion of this review of the works, as well as a detailed written analysis and synopsis of each, this Court, citing *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 48 (2d Cir., 1986), held that it was "unable to conclude that 'no reasonable trier of fact could find the works substantially similar.'" See Op. at 20-21. Defendants have provided absolutely no reason why the Court should reverse or reconsider its prior holding and therefore, under the "law of the case" doctrine, the Court's prior decision on the substantial similarity issue should control.

The "law of the case" doctrine is a rule of practice that dictates that "a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in

subsequent stages of the same litigation." *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304

F.3d 200, 218 (2d Cir., 2002) (citing *In re Korean Air Lines Disaster*, 798 F.Supp. 755, 759

(E.D.N.Y.1992).  Under this rule, "when a court has ruled on an issue, that decision should

generally be adhered to by that court in subsequent stages in the same case." *U.S. v. Uccio*, 940

F.2d 753, 758 (2d Cir 1991)(citing *Arizona v. California*, 460 U.S. 605, 618 (1983))  The rule is

"most commonly understood that [a court should only] depart from a prior holding if convinced

that it is clearly erroneous and would work a manifest injustice."  *Arizona*, supra, fn 8. (*citing*

*White v. Murtha*, 377 F.2d 428, 431-432 (5th Cir. 1967)).

        The law of *this* case is that a reasonable trier of fact could find the works

substantially similar and therefore, notwithstanding Defendants' regurgitation of their arguments

concerning similarity, there remains a question of fact for the jury as to whether or not the works

are in fact substantially similar.

        The works at issue in this case have not changed; they are the same  today as they

were a year ago.  The issue of substantial similarity between the works has already been litigated

once prior to trial.  It is not ripe for reconsideration before and until the jury, the ultimate trier of

fact in this case, has an opportunity to review the works, as this Court has already done once

before, and come to its own "lay observer" opinion on the matter.

        While Defendants point out that this Court's determination was made "within the

prism" of a motion to dismiss, this Court actually applied the more rigorous summary judgment

standard to its analysis.  Unlike a garden variety motion to dismiss, this Court did not conclude

that Plaintiff had merely *alleged* a proper cause of action for copyright infringement, but rather

made a thorough -- and, we respectfully submit, summary judgment level -- review of the works

at issue, which are the "best evidence" in this case and not merely a review of the pleadings, to

determine that a reasonable jury could find the works substantially similar. Therefore, that the Court's determination was made on a motion to dismiss is of no import on the issue of the Law of the Case regarding substantial similarity.

**B.    *Plaintiff Will Not Rehash Her Opposition to the Motion to Dismiss***

Defendants completely rehash their arguments from the motion to dismiss, *to the extent of wholesale cutting and pasting of entire sections from their prior brief.* See, e.g., Appendix B to Defts.' Brief and pp10-11 of Defts.' MOL in Support of their Motion to Dismiss. Instead of cutting-and-pasting Plaintiff's arguments from her opposition to Defendants' motion from 2005, we will focus on the only new issue on the pending Motion, the issue of Defendants' access to the copyrighted work.

**III.**

**ACCESS MAY BE SHOWN THROUGH CIRCUMSTANTIAL EVIDENCE**

**A.    *Unusual Speed May Constitute Evidence of Access***

Since it is a very rare copyright infringement action in which the plaintiff has direct evidence of the defendant viewing and copying his work, courts have recognized that access may be shown by circumstantial evidence. *Hamil America Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999). In listing the various ways of using circumstantial evidence to show access, the foremost scholar on copyright law, Professor Nimmer, wrote in his preeminent treatise on Copyright Law that "unusual speed in the creation of defendant's work *may constitute some evidence* that defendant had access to and used plaintiff's work rather than resorting to independent creation." Nimmer on Copyright, § 13.02[C] at 13-33 (2006)(emphasis added)

In *Design Tex Group, Inc. v. U.S. Vinyl Mfg. Corp.*, 2005 WL 2063819 *2 (Rakoff, J.)(S.D.N.Y., August 24, 2005), the only case on point in this Circuit, the Court took the

"compressed time frame [in which the allegedly infringing work was created]" argument into account in its holding that copyright infringement had occurred.  Where courts in other Circuits have been presented with this issue, they have found the argument to be viable on the question of access, though the other specific facts of the respective cases may have led to different outcomes.

In *Herzog v. Castle Rock Entertainment*, 193 F.3d 1241 (11th Cir., 1999), a case cited repeatedly by the Second Circuit, the Eleventh Circuit held that "unusual speed in the creation of defendant's work may constitute some evidence that defendant had access to and used plaintiff's work rather than resorting to independent creation." (*citing Scott v. Wkjg, Inc.*, 1966 WL 7626 (N.D.Ind.))  There the court analyzed whether three months was an unusually short time to write a screenplay as long as the one for "Lone Star," the film at issue there.  Unlike the 400-page Novel at issue here, "[a] film's screenplay is about 110 pages (120 pages at the most)."  See David Trottier, *The Screenwriter's Bible: A Complete Guide to Writing, Formatting, and Selling Your Script* (4th ed. 2005) at pg. 5 (listed by the Screenwriters Federation of America, f/k/a the Screenwriters Guild of America, as the leading resource for information on screenwriting <http://www.screenwritersfederation.org/screenplay-format.asp>).  The Eleventh Circuit ultimately held that the plaintiff was not able to establish access on this basis because he could not adequately show that three months was in fact an "unusually short" time to write a screenplay of that length "either by comparison to film industry standards or the author's own works."  *See Herzog*, 193 F.3d at 1256.

The Middle District of Tennessee, in *JB Oxford & Co. v. First Tenn. Bank Nat'l Assoc.*, 427 F.Supp.2d 784, 795-796 (M.D. Tenn, April 12, 2006), citing Nimmer, held that "unusual speed in the creation of defendant's work" should be considered one of only three types of circumstantial evidence which should be accepted as evidence of reasonable access.   Citing

the favorable light with which courts must view the facts for the opponent of a summary

judgment, the court considered the fact that "[defendant] created [the commercials at issue] in a

relatively short time frame, suggesting that [he] did not independently create its initial

advertisement," and agreed with the plaintiff's argument on access. *JB Oxford & Co.*, 427

F.Supp.2d at 796. *See also*, *Gemisys Corp. v. Phoenix American, Inc.*, 186 F.R.D. 551, 562 (N.D.

Cal, 1999)(acknowledging the speed in creation argument on the question of access, but

ultimately finding that the software programs were not sufficiently similar to warrant a claim of

copyright infringement).

**B.**    ***Discovery  Elicited a Very Suspicious
Timeframe For the Creation of the Novel***

In discovery, Plaintiff elicited the timeline in which *A Second Time Around* was

purportedly drafted, rewritten, edited, copyedited, published and publicized.

Ms. Clark herself testified repeatedly that she "seriously got to work on [drafting

the Novel] in *late* December [2002]," that "the real definite concentration day in and day out

started in December 2002," and that the "definite writing was really in December 2002." Clark

Tr. at 22, 58.[1]

To construct *A Second Time Around*, Ms. Clark sent batches of around "20-25

pages at a time" to one of her editors, Michael Korda.  See Clark Tr. at 30.  This process would

follow the book chronologically, that is, she sent him "a chapter perhaps or two chapters from

the beginning to the end." Clark Tr. at 30.

According to Ms. Clark's second editor, Mr. Charles Adams, the manuscript

pages from Ms. Clark would be faxed to Mr. Korda, whose assistant would make a copy and

send it to Mr. Adams for a concurrent review of the pages.  Adams Tr. at 15.  Mr. Adams

---

[1] Portions of the deposition transcripts of Ms. Clark, Mr. Adams, and Ms. da Silva are attached to the Paul Aff.
submitted in Support of Defts. Motion for Summary Judgment as Exhibits I, K, and L, respectively.)

testified that the first pages were sent to him on or around Christmas of 2002 and the editing process was *finished* by the end of February.  *Id.*  Following review by Mr. Korda and Mr. Adams, their edits would be forwarded to the copyeditor, Ms. Gypsy da Silva.  According to Ms. da Silva's testimony, who had reviewed her files and Daily Planner from that time period, she received her first batch of *A Second Time Around* on January 29, 2003 and her *last* batch on February 28, 2003, showing that the full editing process was complete by February 28, and therefore, that Clark's drafting must have been completed some time *before* that date. da Silva Tr. at 22, 26-27.

Therefore, according to Ms. Clark's own testimony -- and certainly when drawing all factual inferences in favor of Plaintiff, the non-moving party -- this would place the timeframe of the actual writing of "manuscript" as beginning just before Christmas 2002 and ending at some time *prior* to the end of February 2003. Clark Tr. at 58.  In other words, it supposedly took Ms. Clark *two months or less* to write a 400 page novel and not the "three-month period of intensive writing" that Defendants claim in their Memorandum of Law is "conclusively demonstrate[d]" by the record.  The distinction is quite relevant, as by anyone's standards -- but most importantly, by Mary Higgins Clark's own standards, as will be shown below -- "*two months or less*" is an extremely short amount of time to write an entire 400 page novel and certainly raises material questions of fact as to its creation.  Thus, at the very least, under the summary judgment standard of viewing the facts in the light most favorable for the opponent of the motion, for the purposes of this motion, the Court should find that the record shows it took just two months for Ms. Clark to fabricate the novel *A Second Time Around.*

**C.      By Her Own Statements, It Takes Ms. Clark At**
**Least Six Months to a Full Year to Complete the**
**"Concentrated Writing Process" for a Novel**

Most importantly, even by Defendant Clark's own writing standards, two months is an extremely short amount of time to devote to writing an entire novel.  In her Affidavit, Ms. Clark stated that her "concentrated writing process [for each novel] spans approximately *five to six months*."  Clark Aff. at 11. (emphasis added).   In contrast to Ms. Clark self-serving Affidavit on this motion, Plaintiff uncovered at least four different interviews in which Ms. Clark stated that she takes a full year to six months to write her novels.  The Interviews with the Book Report Network, Barnesandnoble.com, a weblog entry for Amazon.com, and USA Today are attached to the Aff. of Richard F. Horowitz, Esq. as Exhibits 1, 2, 3, and 4, respectively. [2]

In an interview with the TeenReads branch of the Book Report Network, Ms. Clark answered questioned submitted from website readers including this excerpt:

> **Question:** How long does it generally take for you to write a book? How much of that time is research and how much is the actual writing?
>
> **MHClark**: It used to take three years --- when I had a full-time job and five young children. Then it took two years while they were growing up. In the last seven years, I've done a novel a year, and some short stories. I've found that very tight. *I now plan to do one book a year*. I research as I go along. I do initial research, then I keep going. I always do my own research because I find things I didn't even know I was looking for.

*See* Exhibit 1 of Horowitz Aff. at 23. (emphasis added)

---

[2] Though the admissibility of these interviews printed from the Internet has not been challenged, prior to this motion, Defendants would not stipulate to their admissibility.  The deposition of Jesse Kornbluth, the moderator of the Book Report Network interview is attached to the Aff. of Richard F. Horowitz as Exhibit 5.  The Declaration of Alison Maxwell, a person with knowledge of the business record keeping of USA Today, is attached thereto as Exhibit 6.  The interview with Barnes and Noble is the subject of a proposed motion to compel.

Ms. Clark was interview by Barnes and Noble's website, BN.com on May 23, 1997.  In an excerpt from that interview Ms. Clark again stated that it takes her a full year to write a book.

> **"Question**: How long does it take to write each book? Do you ever suffer from writer's block? What do you do to get past it?
>
> **Mary Higgins Clark**: *Each book takes about a year now.* The first one took three years. The next bunch took two years. Now it's a year. A writer once asked that said, "What's writer's block? Did you ever ask a plumber to fix a leaky sink and have him say, 'I have plumber's block'? You stay with it until you find out why it isn't working.""

See Exhibit 2 of Horowitz Aff. at 5. (emphasis added)

On her Amazon.com weblog, called "Mary Higgins Clark's Amazon Blog," Ms. Clark, as recently as March 30, 2006, again stated that it takes one year to write a book.  See Exhibit 3 of Horowitz Aff. at 3. ("…That was when I knew I had a potentially good story…Now a year later, the book is finished.")

But perhaps most enlightening is the interview she gave to USA Today's Book Club on January 2, 2003, which, according to the factual record, would be concurrent with the writing process for the work at issue.  Even there she stated that "the hard work takes about six months."

> **"Wilkes-Barre, PA**: How long, on average, does it take you to write a book?
>
> **Mary Higgins Clark**: From the time I finish one book, the other one is in my head.  The hard work on it takes about six months. As I near the deadline I work about 20 hours a day.  Unfortunately I always work best under pressure."

*See* Exhibit 4 of Horowitz Aff. at 3-4.  If, as the record appears to show, Ms. Clark was already well into the "nitty gritty" of the Novel when she gave this interview, why would she answer that

it takes as long as six months? Would she not have thought that she could get it done sooner or was the "fact" that she finished it in just one more month from the date of this interview a surprise for her? These are questions of fact for the trier of the facts to resolve; they are not appropriate for determination on this summary judgment motion.

In sum, in light of the incredible -- or, at least highly suspicious -- speed with which Ms. Clark claims to have completely drafted her Novel (400 pages in two months or less), the utter paucity of draft pages or notes showing her work during those two months, and the substantial similarity between the works, a reasonable jury certainly could find that Defendants did in fact have a reasonable opportunity to view Plaintiff's screenplay, and thus, had access to it. There is clearly an issue of fact as to whether or not Ms. Clark and the Defendants had access to the Work.

**D.** *Clark's Alleged Notes Do Not Show Independent Creation*

The incredible speed with which Ms. Clark supposedly put together the Novel is particularly suspicious considering that she was apparently working with a very small amount of notes or groundwork before drafting the Novel in its entirety, in chronological order. In response to Plaintiff's demand for the production of documents, Ms. Clark produced only one photocopied notebook purporting to contain the notes on what was supposed to become *A Second Time Around*. The notebook consisted of fewer than 25 sparsely-written pages. (See Exhibit 7 to the Affidavit of Richard F. Horowitz.) Defendants have not submitted any evidence of independent creation to refute Ms. Gal's access contentions. It is certainly within the purview of the jury to decide if a 400-page book could be written with fewer than 25 pages of notes, including no outlines or story drafts and if this notebook is actually any evidence whatsoever of independent creation. *See cf. O'Rourke v. RKO Radio Pictures*, 44 F.Supp. 480, 482 (D.Mass. 1942).

For all the aforementioned reasons, Defendants' summary judgment motion should be denied and this Court should promptly set a date for trial on the merits.

## IV.

### <u>SANCTIONS/FEES</u>

As the standards for each are substantially the same, Plaintiff will address Defendants' request for attorneys' fees under 17 U.S.C. § 505 of the Copyright Act, together with their Motion for Sanctions under Rule 11(b) of the Federal Rules of Civil Procedure.  In discussing attorneys' fees under the Copyright Act, "[t]he [United States Supreme] Court, while stressing that the decision to award fees rests in the court's equitable discretion, also approved in dicta several nonexclusive factors courts could consider when awarding fees, namely, 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Crescent Publishing Group, Inc. v. Playboy Enterprises, Inc.,* 246 F.3d 142, 147 (2d Cir., 2001) (citing *Fogerty v. Fantasy*, 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).  "The standard for triggering the award of fees under Rule 11 is 'objective unreasonableness.'"  *Salovaara v. Eckert*, 222 F.3d 19, 34 (2d Cir. 2000)(citing *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000)).

This is not Defendants' first attempt to impose sanctions upon Plaintiff and us. In fact, motions for sanctions are apparently Defendants' modus operandi for whenever a plaintiff fails to obey their every wish, such as dropping a case she and her counsel sincerely believe is meritorious.

In their second motion for sanctions, Defendants again proffer two supposed bases for imposing Rule 11 sanctions against Plaintiff in favor of Defendants: (1) that Plaintiff's

- 14 -

claim for copyright infringement is baseless, and (2) that Plaintiff continued to pursue the case following the discovery process.  This motion is simply a bullying tactic of Defendants, is itself frivolous, and should be summarily denied.

Defendants' previous motion for sanctions asserted that Plaintiff's claim was baseless and was submitted together with their pre-Answer motion to dismiss the Complaint.  In denying the Motion to Dismiss, this Court, held that not only had Plaintiff adequately stated a claim for copyright infringement, but that the Court could not hold that a reasonable jury would not be able to find the works at issue substantially similar (the more rigorous summary judgment standard than for a motion to dismiss).  In its Memorandum and Opinion dated December 5, 2005, this Court stated that:

> "…[A]s I have already concluded in this opinion that Plaintiff's infringement claim alleges enough to survive a Rule 12(b)(6) motion to dismiss, it follows that the claim is not 'baseless' for Rule 11 purposes, thus no sanctions are warranted with regard to that asserted reason."

*See Memo and Op.* at 22.

Since this Court's December 5, 2005 ruling, Plaintiff has not amended its Complaint in any way; no claims were added, none were taken away.  There is, therefore, no less "basis" for Plaintiff's claim today than there was a year ago and this motion for sanctions should be denied for that reason alone.

Defendants also cite Plaintiff's perseverance with her claims as a reason for sanctions.  As this Court has already rendered its decision on the existence of an issue of fact concerning substantial similarity, Plaintiff, again, will direct its arguments to the issue of Plaintiff's showing of access.

As stated above, Plaintiff has elicited two major theories of access during the course of discovery supported by circumstantial evidence: the extreme speed with which

Defendant Clark allegedly independently wrote the Novel, and the utter lack of supporting notes and drafts that would indicate independent creation. Each of these arguments has strong support in the caselaw as well as in the leading treatise on the issue, Nimmer on Copyright. Neither of these arguments is frivolous.

Defendants do not dispute that the standard for Rule 11 sanctions is an objective one. Regarding continuing a legal action, as opposed to initiating one, an attorney must "withdraw any claims that become unsupportable later." Deft. MOL at 24 (citing *Gambello v. Time Warner Comm. Inc.*, 186 F.Supp.2d 209, 230 (E.D.N.Y. 2002)) However, the situation is quite to the contrary in this case where discovery has in fact unearthed the evidence that supports Plaintiff's theories of access to her Work.

The Second Circuit has held that "…sanctions may not be imposed unless a particular allegation is utterly lacking in support." *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir.1996) As discussed in further detail above, it was the discovery process, including depositions of several key witnesses, that led to Plaintiff's ascertaining the suspiciously short time frame within which Ms. Clark claims to have fabricated her novel (400 pages in just two months). Furthermore, it was document discovery in this case that elicited the fewer 25 pages of handwritten notes that allegedly formed the basis for the 400-page novel.

As in *Baker v. Urban Outfitters, Inc.*, 254 F.Supp.2d 346, 361 (S.D.N.Y., 2003), "the primary motivation, it seems, for [Defendants'] Rule 11 motion appears to be that [Plaintiff] has not rolled over and played dead, withdrawing [her] complaint." Plaintiff's copyright infringement claims are far from baseless; the similarities between the works have already been analyzed by this Court and found to exist, and Plaintiff's argument on access is supported by the

factual record, the case law and the leading treatise.  Thus, each of plaintiff's arguments is anything but frivolous and, as before, sanctions are certainly not warranted.

## CONCLUSION

Notwithstanding Defendants' protestations to the contrary, the only proper resolution of this case can be at trial before a jury of laypersons. This motion for summary judgment suffers from the same deficiency as did Defendants' pre-Answer motion to dismiss: Defendants apparently find it difficult to comprehend that reasonable people can possibly disagree and can reasonably interpret the same facts differently. This Court has already held that the parties should put to the jury their respective arguments concerning substantial similarity. A similar result should obtain on this motion. There is ample evidence to support Plaintiff's showing of access under the applicable law. It certainly cannot be said that a reasonable jury could not conclude, on this record, that there was access. The motion for summary judgment should be denied.

If anything is frivolous in this case, it is Defendants' persistence in accompanying every motion that they make with a request for sanctions. We and our client refuse to be intimidated into dropping a case that we sincerely believe is meritorious. We will resist the strong temptation to demand sanctions against Defendants and their attorneys for, once again, burdening the Court with a baseless sanctions motion. We ask only that Defendants' summary

judgment and sanctions motions be denied and that this case be scheduled for trial at the Court's early convenience.

Dated: New York, New York
      January 4, 2007

                     **HELLER, HOROWITZ & FEIT, P.C.**

                     By:_____
                          Richard F. Horowitz (RH-6451)
                          Evan R. Shusterman (ES-5211)
                     292 Madison Avenue
                     New York, New York 10017
                     (212) 685-7600

                     *Attorneys for Plaintiff*